## ANDRIUSZIS v. PHILADELPHIA & READING COAL & IRON CO.

(Supreme Court, Appellate Division, Second Department. March 10, 1911.)

1. MASTER AND SERVANT (§ 97*)—PROXIMATE CAUSE OF INJURY—NATURAL AND PROBABLE CONSEQUENCES.

Where a miner in charge of two helpers cleaned out a missed hole, and placed another charge on top of it, and then exploded the top charge, and the usual experience was that the lower charge would be exploded, his negligence in cleaning out the original hole, which was a more dangerous procedure than to drill another beside it, was not the proximate cause of an injury to his helper, occasioned by the explosion of part of the charge when he was removing the débris, for the failure of the charge to explode could not be anticipated.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 163; Dec. Dig. § 97.*]

2. MASTER AND SERVANT (§ 124*)—INJURIES TO SERVANT—DUTY OF INSPECTION.

A master is not liable for an injury to a laborer in a mine, where the one in charge, having no reason to anticipate any danger from any unexploded part of a blast, failed to inspect the place in which a blast had recently been exploded.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 235–242; Dec. Dig. § 124.*]

3 MASTER AND SERVANT (§ 124*)—INJURIES TO SERVANT—INSPECTION—SUFFICIENCY.

Where one in charge of miners engaged in blasting went first to the hole after exploding a blast, and looked in, and said it was a good shot, that was a sufficient inspection, to relieve the master of liability for in-

juries to one of the miners by· a subsequent explosion of a part of the blast.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 235–242;   Dec. Dig. § 124.*]

Appeal from Trial Term, Richmond County.

Action by John Andriuszis against the Philadelphia & ·Reading Coal & Iron Company.   From a judgment for plaintiff, defendant appeals.   Reversed and remanded.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and RICH, JJ.

Pierre M. Brown, for appellant.

M. Spencer Bevins, for respondent.

BURR, J.   Defendant is engaged in the mining of coal.   Among the mines operated by it is one situated at Girardville, in the state of Pennsylvania.   On March 1, 1909, plaintiff was injured while at work therein.   The statute of the state of Pennsylvania provides that:

"In all actions brought to recover from an employer for injury suffered by his employé, the negligence of a fellow servant of the employé shall not be a defense where the injury was caused or contributed to by any of the following causes, namely: * * * The neglect of any person engaged as superintendent, manager, foreman, or any other person in charge or control of the works, plant, or machinery; the negligence of any person in charge of or directing the particular work in which the employé was engaged at the time of the injury or death; * * * the negligence of any person to whose orders the employé was bound to conform, and did conform, and, by reason of his having conformed thereto, the injury * * * resulted."   Laws 1907, Act No. 329.

Plaintiff, pleading such statute, also pleaded that defendant failed to provide him with a safe place in which to work, with proper and suitable tools, implements, and appliances, that defendant failed to properly instruct plaintiff as to the method to be pursued in doing his work and of the dangers incident thereto, that defendant furnished plaintiff with an insufficient number of fellow servants, that defendant furnished plaintiff with incompetent fellow servants, and that defendant failed and neglected to promulgate and enforce proper rules and regulations for the performance of such work, and sought to hold it responsible for his injuries.   From a judgment in his favor, and from an order denying a motion for a new trial, this appeal is taken.

Several important questions were presented upon the argument, some of which are novel.   If there was any active negligence which was the proximate cause of plaintiff's injury, it was that of a miner named Adam Shukavage.   Defendant claims that he was what is known as a "contract miner," one who is given a piece of work to do, and paid by the yard as the result is accomplished.   The contract miner furnishes his own laborers, and they are paid by him. Although in the first instance the actual disbursement is made by defendant, the amount thereof is deducted from the sum which the contract miner becomes entitled to receive under his contract.   Assuming this to be a correct statement of the relation of the parties, de-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

fendant contends that neither plaintiff nor Shukavage was in its employ, and that it owed to the former no active duty, and is not responsible for the negligent conduct of the latter. Defendant further contends that if the relation of master and servant did exist, if both plaintiff and Shukavage were in its employ, then they were fellow servants. At common law the common master is not responsible to either for the negligence of the other.

Defendant contends that the Pennsylvania statute above referred to does not alter this situation. Its argument may be thus summarized: First, such statute has no extraterritorial force, and is only made effective here by comity, for the reason that New York has a similar statute relating to employer's liability; second, Shukavage is not shown to have been, within the terms of said statute, either a foreman, superintendent, or person in control; third, as the New York statute requires that employés who claim the benefit thereof shall serve a notice upon the employer within a prescribed time, stating the time, place, and cause of the injury, comity does not require that the courts of this state shall extend the benefits of a foreign statute to cases where, as in the case at bar, no notice of a similar character was served; fourth, the complaint in this action does not in express terms allege any negligent act of superintendence on the part of any person engaged by defendant as superintendent, manager, foreman, or in charge and control of the works. Defendant still further contends that, as the complaint attempted to state a cause of action at common law and also one under the Pennsylvania employer's liability act, the trial court erred in not compelling plaintiff to elect, at the close of the case, upon which cause of action he would go to the jury.

We think that it is not necessary to decide any of these questions, nor to review the greater part of the conflicting evidence in the case, in order to determine whether the verdict is against the weight thereof. Conceding, for the sake of argument, that both plaintiff and Shukavage were employés of defendant, that the position which the latter occupied was that of foreman in charge or control of the work, and that plaintiff is entitled to the full benefit of the Pennsylvania statute, we think that he cannot recover, for the reason that Shukavage's negligence was not the proximate cause of the injury which he sustained.

Plaintiff was a miner's laborer, and had been for more than two years. When he first went to work in defendant's mine, he assisted a certified miner named Batitski. Another laborer, named Batitus, also assisted him. On the morning of the day of the accident Batitski, with Batitus's assistance, had drilled a hole about three feet deep, for the purpose of blasting out what is known as a "leg hole." In this it was the intention to place an upright timber, upon which rested a crosspiece known as a "collar," to support the roof of the gallery or gangway in which they were working. In the hole which he drilled, Batitski placed a stick of dynamite with a fuse, and tamped it down; but for some reason the expected explosion did not take place. This was what is called a "missed hole." After this failure Batitski and Batitus, his helper, went home. The miners' work was done in two

shifts, and in the afternoon Shukavage went to work in Batitski's place. He was told that there was a missed hole, and he started to remedy the difficulty. Plaintiff and Batitus were his helpers, and both knew of the conditions.

There are two methods pursued by miners in the case of a missed hole, which is not an infrequent occasion. One method is to drill another hole, about six inches or a foot from the first hole, charge that with dynamite, and explode it. The force and concussion resulting therefrom explodes the dynamite in the first hole. The other method is to remove the tamping from the first hole, place another stick, or part of a stick, 'of dynamite on top of the first one, and then explode both together. The former is considered the safer method, solely because of the danger in removing the tamping over the unexploded stick of dynamite. But, if that is safely accomplished, either method is effective in exploding the original charge. The expert witnesses called for defendant testified that they never knew of an instance, when the top charge exploded, that the other one did not, and the only expert witness called for plaintiff failed to testify to any such instance within his knowledge. He did assume to say that if the hole were not properly cleaned out, and loose dirt were left between the first and second sticks of dynamite, such a result might not follow. He states no fact to support his conclusion. But Batitus, called as a witness for plaintiff, testified that Shukavage did clean out the first hole to the depth of two feet or more. As the hole was originally but three feet deep, and a stick of dynamite is eight inches long, there could have been no substantial amount of loose dirt between the top of the cap on the first stick of dynamite and the bottom of the second stick. It would have been less than would have been the distance between the two cartridges if a second hole had been drilled.

There is no credible evidence in the case from which a jury could say that if the danger attendant upon removing the tamping from the original hole was past, that method of exploding both charges was not equally safe and efficient with the other, or that a reasonably prudent man would have any reason to anticipate that there was any reason to apprehend that one would explode without the other. There is a sharp conflict of evidence as to the method which Shukavage employed. But if we concede, as claimed by plaintiff, that he did not drill a second hole, plaintiff's evidence establishes that the tamping was safely removed. If Shukavage was guilty of any negligent act at all, it was in attempting to remove the tamping from the first hole. His negligence was therefore harmless. After that had been done, and a second cartridge inserted within a few inches of the first one, they all retired to a safe distance, and an explosion followed. Then they all returned to the scene of the explosion, and, according to plaintiff's testimony, he began with a shovel to remove the loose coal and dirt. After he had shoveled away the loose material, and had reached the hard coal, he took first a pick and then a drill to attempt to loosen this, and while working with the drill, and bending over his work, an explosion occurred. Just what it was that exploded does not appear. It would seem hardly possible that it

could have been an entire stick of dynamite, for large pieces of material were not thrown out. The dynamic force of the explosion was not very great; but it was sufficient to throw dirt in the plaintiff's eyes, destroying his sight. Whether it was part of the cap of a cartridge, or a small portion of one of the dynamite sticks, or whatever it was, upon the evidence in this case no one could be reasonably expected to suppose that the situation when plaintiff went to work to clear out the hole was any longer dangerous, or be required to anticipate and guard against a possible explosion.

Plaintiff contends that, even though the noise of the explosion might have justified the belief that both cartridges had exploded, it was Shukavage's duty to examine and see that such was the case before directing plaintiff to go to work. Inspection is not necessary, when there is no reason to anticipate danger. But it appears that Shukavage did all that any one could have done in that direction. He went first to the hole after the explosion, and, in the words of the witness Batitis, looked at it and said "it was a good shot," and the witness adds, "I seen myself that it was shot all loose around."

Plaintiff's injury appeals strongly to sympathy; but we can see no ground upon which defendant's legal liability therefor can be sustained.

The judgment and order should be reversed, and a new trial granted; costs to abide the event. All concur.